Hassan A. Zavareei (SBN 181547)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com

Jeff Ostrow*
Jonathan M. Streisfeld*
Joshua R. Levine*
Daniel Tropin*
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: streisfeld@kolawyers.com
       ostrow@kolawyers.com

Melissa S. Weiner*
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email: mweiner@pswlaw.com

Daniel L. Warshaw (SBN 185365)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*pro hac vice application forthcoming

Counsel for Plaintiff and the Proposed Class

# IN THE UNITED STATES DISTRICT COURT FOR THE FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIKS OBERTMAN, on behalf of himself and all others similarly situated<br><br>　　Plaintiff,<br>v.<br><br>FRONTIER AIRLINES INC.,<br><br>　　Defendant. | **CLASS ACTION COMPLAINT**<br><br>Case No.<br><br>**JURY TRIAL** |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiff, Feliks Obertman ("Obertman" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Frontier Airlines, Inc. ("Frontier" or "Defendant"), and alleges the following:

## INTRODUCTION

1. Frontier is the eighth-largest commercial airline in the United States, operating flights to over 100 destinations throughout the United States and 30 international destinations. Frontier typically operates around 300 daily flights. But this year, Frontier has responded to a sudden drop in demand for passenger air travel by canceling scores of scheduled flights.

2. Under the terms of Frontier's uniform contracts with its customers, when the airline cancels a flight, the airline must either re-accommodate passengers on another flight or refund the passengers. Frontier has breached its contracts with thousands of paying customers by offering credits for future travel on the airline instead of providing refunds for flights canceled by the airline.

### Declining Demand in Light of Novel Coronavirus Severely Impacts Frontier's Operations

3. On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or SARS-CoV-2. The illness caused by the virus has been termed COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic cases of COVID-19.

4. Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

5. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

6. In efforts to curb the spread of the virus, federal, state and local governments have

implemented temporary travel restrictions and guidelines advising against essential travel. In the United States, the federal government has limited travel from China, Europe, and the United Kingdom, permitting only the return of U.S. citizens and permanent residents. The Department of State also advised on March 19, 2020, that U.S. citizens should temporarily avoid all international travel, with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.

7. State and local governments have also restricted local travel. On March 16, 2020, seven counties in the San Francisco, California area announced shelter-in-place orders to reduce local traffic to activities necessary to perform "essential" activities. Other states, counties, and municipalities have since implemented similar shelter-in-place orders, and as of the drafting of this Class Action Complaint, at least 316 million people in at least 42 states, three counties, nine cities, the District of Columbia, and Puerto Rico are living under such orders.

8. In addition to health and safety concerns, people across the country are facing increasing economic stress due to the novel coronavirus, including unemployment levels not seen since the Great Depression.

9. As the travel limitations, virus fears, and economic uncertainties mounted, consumer demand for air travel, particularly leisure and non-essential business travel, quickly declined. In response to this declining demand, Frontier has cancelled many flights in the United States to avoid flying planes with too many empty seats to be profitable.

10. The main way that airlines like Frontier determine operational capacity (*i.e.*, how many flights it markets and flies) is by looking at passenger "load factors" on each route. Load factors measure the percentage of seats filled on an aircraft (or set of aircraft) scheduled to depart. Load factors can be determined for an overall schedule (all flights to all destinations), for particular routes (all flights between two airports), or for particular flight service (a specific scheduled flight with its own flight number). If load factors fall too low, airlines will determine that operating flight service as

scheduled would not be profitable (or otherwise economically desirable) and will then typically modify the schedule—including by canceling previously scheduled flights

11. Frontier's overall load factor is typically around 85-89%. But with declining customer demand in light of COVID-19, the airline has seen significant drops in its load factors.

12. Driven by the drop in travel demand, Frontier decreased its total flight capacity by 90% in April. It plans to fly at only 35% of the usual flight capacity by May 2020.

**Frontier Offers Customers Credit Where Refunds Are Due**

13. When Frontier cancels a flight, its contracts with its passengers require the airline to either (1) reaccommodate and transport passengers to their destination on another flight; or (2) provide a full refund for any unflown flight segments. The contract terms governing cancellations by the airline do not give Frontier the option of providing customers with a "credit" for future travel on the airline instead of a refund.

14. Nevertheless, after canceling as many as 90% of its scheduled flights, Frontier has offered many of its canceled passengers only two options: (1) rebook your flight—sometimes weeks or more from the original travel date—or (2) obtain travel credit.

15. However, as will be explained below, Frontier's Contract of Carriage mandates refunds, not credits, in this situation.

16. Instead of following the terms of its Contract of Carriage, Frontier is unilaterally pushing vouchers or credits on customers, making it impossible for many customers to request refunds, and denying refunds when legitimate requests are made.

17. Frontier is placing its concern for its own financial stability ahead of the significant economic impacts its consumers are facing in this unprecedented economic downturn. In just over one month, over 22 million people in the United States have applied for unemployment benefits, and the U.S. unemployment rate has climbed to over 20%—the worst it has been since the Great Depression. As many as one-third of the 40 million renters in the U.S. are unable to make their rent,

and millions of people with home mortgages will likely face foreclosure. Meanwhile, Frontier is currently slated to receive an influx of government rescue funds, in the form of grants and loans that will likely be forgiven. These government bailout funds are tied to the airline's commitment to provide a minimum level of service to airline customers, and yet, Frontier is already failing to meet its commitments to existing customers who are owed refunds. Now more than ever, customers whose flights or reservations have been canceled by Frontier need the prompt refunds to which they are entitled.

18. As numerous customers complained about this practice by Frontier and other airlines, the DOT issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice"). The DOT Notice provides that the airlines must refund tickets if they cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be **refunded promptly** when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, **the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.**
>
> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.
> **Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight**

CLASS ACTION COMPLAINT    5

***disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.*** Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.[1]

(emphasis added).

19. Thus, Frontier's failure to provide prompt refunds for canceled flights violates not only its own Contract of Carriage, but also federal law.

## PARTIES, JURISDICTION, AND VENUE

20. Feliks Obertman is a California citizen who resides in Elk Grove, California.

21. Defendant is a Colorado for-profit corporation having its principal place of business in Denver, Colorado.

22. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

23. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred.

## GENERAL ALLEGATIONS

24. On March 17, 2020, Plaintiff purchased two roundtrip tickets for travel from Sacramento (SMF) to Denver Intl (DEN), for him and his wife. The flight was scheduled to depart on May 8, 2020.

---

[1] U.S. Dep't of Transportation, Enforcement Notice Regarding Refunds by Carriers given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel (Apr. 3, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf.

25. On March 21, 2020, Plaintiff purchased one additional roundtrip ticket for his daughter for the same flight—Sacramento (SMF) to Denver Intl (DEN).

26. On or about March 23, 2020, Plaintiff received an email from Frontier informing him that the May 8th flight had been cancelled and he would be rebooked.

27. On or about March 31, 2020, Plaintiff received an email from Frontier informing him that the reservation had been further modified and he was now booked on a flight scheduled to depart Sacramento on May 10, 2020.

28. Plaintiff contacted Frontier and was informed that his two options were to accept this rebooked flight, two days after his originally scheduled trip, or take a credit for future travel on Frontier. Plaintiff requested a refund, but Frontier told him that option was not available to him. Having no need for a plane ticket on May 10, 2020, Plaintiff was forced to accept the credit subject to expiration.

29. In sum, despite the fact that Plaintiff could not take the flight he booked because Frontier canceled it, Frontier failed to provide a refund to Plaintiff and, instead, only offered Plaintiff a voucher for use on a future Frontier flight.

**The Contract**

30. Every Frontier passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Frontier's Contract of Carriage. *See* **Contract of Carriage, attached as Exhibit A.** Frontier drafted the Contract of Carriage.

31. Section 18 of the Contract of Carriage governs in a situation where Frontier cancels a flight, as was the case for Plaintiff and other Class members. While there are a number of circumstances under which Frontier could cancel a flight, in every case, Frontier is required to provide a reasonable accommodation to the passenger's ticketed destination or refund the fare.

32. The Contract of Carriage states in relevant part:

   B. Force Majeure - In the occurrence of a force majeure event, Frontier may cancel,

CLASS ACTION COMPLAINT                                                                                                    7

divert, or divert, or delay any flight without liability **except to provide a refund for the unused portion of the ticket.**

C. Delay, Misconnection, or Cancellation - In the event (i) a passenger's flight is canceled, (ii) a passenger is denied boarding because an aircraft with lesser capacity is substituted, (iii) a passenger misses a connecting Frontier flight due to a delay or cancellation of a Frontier flight (but not flights of other carriers), (iv) a passenger is delivered to a different destination because of the omission of a scheduled stop to which the passenger held a ticket, to the extent possible, Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination or equivalent destination as provided herein. Frontier will have no obligation to provide transportation on another carrier. **If Frontier cannot provide the foregoing transportation, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing.** The foregoing shall be the limit of Frontier's liability for the matters covered by this provision.

\* \* \*

E. Schedule Change Prior to Day of Travel -- When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:

   1) Transport the passenger over its own route system to the destination; or
   2) In the event Frontier determines that the schedule modification is significant, Frontier shall, if requested, **provide passengers a refund of the cost of the unused portion of the ticket.**

Ex. A at § 18 (emphasis added).

33. Section 20(B)(3) specifies that "[a] refund will be provided only to the original purchaser's form of payment."

34. Further, under Frontier's Customer Service Plan, Frontier reiterates that in the event of a flight cancellation—whether caused by a controllable situation or an uncontrollable situation—Frontier will "provide you, upon request, a full refund of any unused portion of your ticket." **Exhibit B, Frontier Customer Service Commitment, ¶ 12.**

35. Both Section 18 of the Contract of Carriage and paragraph 12 of the Customer Service Plan clearly provide for either rebooking or a refund in the event that Frontier cancels a flight. Neither provision provides for any "credit" for use on a future Frontier flight.

36. Here, Plaintiff's flight was canceled, and Frontier only offered to rebook him on

another flight two days after his and his families' originally scheduled travel date. Plaintiff informed Frontier that the rebooked flight was not an acceptable alternative transportation and that Plaintiff would not be taking that flight. Plaintiff had not used any portion of the roundtrip ticket for his trip. Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund of the fare for the roundtrip ticket in U.S. Dollars to his original form of payment. Ex. A at §§ 18; 20(B)(3).

## CLASS ACTION ALLEGATIONS

37. Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

> All persons in the United States who purchased tickets for travel on a Frontier Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Frontier, and who were not provided a refund.

38. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered. Also excluded from the Class is any person who was reaccommodated and transported to their ticketed destination by Defendant or its agents.

39. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

40. The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

41. **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include thousands of persons across all 50 states, there is significant risk of

inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

42. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States. Affected consumer's names and addresses are available from Frontier's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

43. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

   a. Whether Defendant's conduct breaches its Contract of Carriage;

   b. Whether Defendant is required to give a refund, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

   c. Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant; and

   d. Whether Plaintiff and members of the Class are entitled to compensatory damages.

44. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct

and damaged in the same way. Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., canceling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

45. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

46. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

47. **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

## COUNT I - BREACH OF CONTRACT

48. Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 46 above as if fully set forth herein.

49. This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage (the "Contract").

50. Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment. This Contract was drafted by Defendant.

51. Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

52. Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

53. Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Frontier canceled their flights and did not reaccommodate and transport the customers to their destinations on another flight. Contract of Carriage § 18(a)(1). By failing to provide refunds, Frontier has breached its Contract of Carriage.

54. As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all putative Class members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

2. For himself and each Class member their actual compensatory damages, or in the alternative, for specific performance of the refund provisions of the Contract of Carriage;

3. For reasonable attorneys' fees and costs of suit;

4. For pre-judgment interest; and

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 21, 2020

Respectfully submitted,

*/s/ Hassan A. Zavareei*

Hassan A. Zavareei (SBN 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com

Jeff Ostrow*
Jonathan M. Streisfeld*
Joshua R. Levine*
Daniel Tropin*
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100

Facsimile: (954) 525-4300
Email:  streisfeld@kolawyers.com
ostrow@kolawyers.com

Melissa S. Weiner*
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
Email:  mweiner@pswlaw.com

Daniel L. Warshaw (SBN 185365)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

**pro hac vice* application forthcoming*

*Counsel for Plaintiff and the Proposed Class*